Robert Cecil LANGSTON, Appellant,

v.

Janie A. HOENIG et al., Appellees.

No. 17383.

Court of Civil Appeals of Texas, Fort Worth.

April 27, 1973.

Rehearing Denied May 25, 1973.

Philip M. Shafer, and Jimmie F. Y. Lee, Houston, for appellant.

John E. Chambers, Fort Worth, G. Dixon Mahon, Ozona, Pope, Hardwicke, Hobbs, Christie & Montgomery, and George F. Christie, and Larry K. Montgomery, Fort Worth, for appellees.

## OPINION

LANGDON, Justice.

This suit was brought by Janie Adwell Hoenig, J. V. Adwell, and Sarah Adwell Brown, joined at the time of trial by B. B. Adwell, individually and as administrator of the Estate of Bessie Adwell, deceased, Burl Adwell and David Adwell (the latter a minor, acting by and through his duly appointed guardian ad litem) to recover money invested by Bessie Adwell, prior to her death in a business venture with Robert Cecil Langston.

W. V. Adwell was married to Bessie Adwell. They had one child, B. B. Adwell, and five grandchildren, Janie Adwell Hoenig, J. V. Adwell, Sarah Adwell Brown, Burl Adwell and David Adwell, being all of the children of B. B. Adwell. W. V. Adwell and Bessie Adwell are both dead, he having died March 8, 1966, and she having died March 31, 1970. The appellees herein are B. B. Adwell, the only child, and all of the five grandchildren of W. V. Adwell and Bessie Adwell. All of the appellees, including B. B. Adwell, are remaindermen of a life estate created by the will of W. V. Adwell and the appellee B. B. Adwell is also the sole devisee and heir at law of Bessie Adwell and Administrator with Will Annexed of her estate. By their suit the appellees seek to recover $120,000.00 which Bessie Adwell invested in a partnership with the appellant, Robert C. Langston, subsequent to the death of her husband, W. V. Adwell.

W. V. Adwell left a valid written will dated March 18, 1965, which was admitted to probate in the County Court of Tarrant

County, Texas, by order dated March 28, 1966.

Upon the death of W. V. Adwell, March 8, 1966, Bessie Adwell became the life tenant of the community interest of W. V. Adwell. The remainder interest in the estate of W. V. Adwell vested on his death in his only child, B. B. Adwell, and all of the five grandchildren of W. V. and Bessie Adwell equally, subject only to the life tenancy of Bessie Adwell.

Bessie Adwell left a will dated July 19, 1967, which was admitted to probate by order of the County Court of Tarrant County, Texas, on June 4, 1970. B. B. Adwell, appointed by the same order as Administrator with Will Annexed of the Estate of Bessie Adwell, has duly qualified, and is acting as such at this time. The will of Bessie Adwell disposed only of one piece of property and had no residuary clause, thus causing the balance of her estate to pass to B. B. Adwell by intestacy. B. B. Adwell joins herein as Administrator with Will Annexed of the Estate of Bessie Adwell by trial amendment pursuant to a Plea in Abatement by appellant.

As early as July, 1969, Bessie Adwell began a program of withdrawing savings accounts and selling stock, which savings accounts and stock were inventoried in the estate of W. V. Adwell, and constituted part of Bessie Adwell's life estate created by his will. The proceeds of the savings accounts and stock sale amounted to $120,-000.00. The proceeds of the stock sale of $82,680.00 were admittedly used to purchase three lots of land in Arlington, Texas, in August and September, 1969, title to which was taken in the names of Bessie Adwell and R. C. Langston, and the balance remaining after such land purchases of $43,-577.09 was deposited in a bank account at Arlington Bank and Trust, Arlington, Texas, under the name "L–A Warehouse and Storage". Bessie Adwell also deposited into this "L–A Warehouse and Storage" account the sum of $37,320.00, which was part of the proceeds from withdrawal of all of the First National Bank in Arlington savings accounts left on the death of W. V. Adwell and which was part of the life estate. This account, when added to the $82,-680.00 received from sale of the First National Bank in Arlington stock on July 15, 1969, totaled $120,000.00.

On September 17, 1969, Bessie Adwell and R. C. Langston signed an agreement for a proposed partnership to be entered into between them for the purpose of "performing and carrying on a business of storage and warehousing for any and all kinds of personal property". The agreement required a contribution in cash and/or property by Bessie Adwell of $120,000.00 and required no cash contribution by R. C. Langston. The agreement contemplated that Langston would operate the warehouse, for which he would receive not only $800.00 per month salary, but half the profit remaining thereafter.

Almost $40,000.00 of the $120,000.00 converted to cash by Bessie Adwell was used to purchase the three lots in Arlington. The balance, of over $80,000.00, was used in the fall of 1969 to construct a warehouse on the three lots and to pay Langston for his efforts in connection with clearing the land annd supervising the construction. Langston drew $200.00 a week for his efforts and his family was paid at least $2,325.00 in addition to that.

In early 1970, it became apparent that the $120,000.00 loan was not sufficient to complete the construction of the warehouse and allow normal operations to begin pursuant to the agreement of September 17, 1969. Negotiations for another loan to be made by R. C. Langston and Bessie Adwell for an additional $25,000.-00 were in process at the time of her death on March 31, 1970. No loan was ever obtained and the warehouse was never opened and Langston never operated it as was contemplated by the agreement.

After the death of Bessie Adwell, and up to the time of Langston's deposition in this cause on May 18, 1971, no attempt had

been made by Langston to open and operate the warehouse. Since that time, attempts have been made, but the warehouse has never operated at a profit, and construction is still not completed.

This cause of action was filed January 19, 1971, to recover from R. C. Langston the interest in the life estate created by the will of W. V. Adwell which Bessie Adwell loaned to the partnership venture of L–A Warehouse and Storage, which interest vested in them upon the death of W. V. Adwell on March 8, 1966, subject only to the right of Bessie Adwell to use such interest for and during her lifetime. It is undisputed that Bessie Adwell had the right and the authority to sell the stock and to convert the savings account to generate the cash with which to enter the joint venture in question. Under her husband's will she had the right to invest and reinvest such proceeds for and during her natural lifetime.

This cause was tried to the court without a jury. The court construed the instrument of September 17, 1969, to mean that the loan of $120,000.00 made by Bessie Adwell was due and payable by R. C. Langston in a lump sum upon the death of Bessie Adwell. The trial court rendered judgment for appellees against appellant for the sum of $120,000.00 with interest thereon from the date of judgment at the rate of six percent (6%) per annum, for all costs of suit, and awarded the guardian ad litem a fee to be charged as part of the costs of suit. The court made twenty-nine (29) findings of fact and six (6) conclusions of law, all of which were incorporated into its judgment.

This appeal is from that judgment based upon fifty-three (53) points of error.

We reverse and render.

As we read and interpret the record before us the contention of the appellees that the loan of $120,000.00 made by Bessie Adwell to the warehouse venture was due and payable by R. C. Langston in a lump sum

upon her death was upheld by the trial court and the contention of the appellant Langston that repayment of the loan was to be made from net profits over a period of time was rejected. Having carefully reviewed the record in its entirety we have concluded that the court erred in so holding.

■ This appeal, therefore, involves the sole question of how the loan in question was to be repaid under the provisions of the partnership agreement entered into between Bessie Adwell and Langston on September 17, 1969. It is unnecessary to discuss in turn each of the points of error raised on this appeal because the only question involved is the interpretation of the agreement. It is not our province to pass upon the propriety of Bessie Adwell's execution of such an agreement. It was her right to do so. There is no contention that the agreement is ambiguous.

The written agreement executed by the parties to it on September 17, 1969, is a rather typical book form partnership agreement described generally in the paragraphs next following except paragraphs Nos. VI, VII and VIII of the agreement relating to the repayment of the $120,000.00 loan, which paragraphs are set forth in full.

STATE OF TEXAS }
COUNTY OF TARRANT }

A preamble and purpose clause.

I. A designation of name and place of business.

II. Covenants not to compete and to use best efforts for the partnership.

III. Division of profits and losses.

IV. A clause concerning books of account, designating a partnership bank account and providing a procedure for signing checks and keeping books.

V. A covenant not to incur liability without consent of both parties and indemnity for acts of negligence and bad faith.

"VI. BESSIE J. ADWELL will contribute to the partnership the sum of $120,-000.00 in cash and/or property for the use and benefit of the partnership. *Said amount is to be considered as a loan without interest and is to be repaid by the partnership in the following manner:*

"A. Beginning sixty (60) days from the date actual business operations begin one/fourth ¼ of all net profits after all expenses are paid *shall be set aside and paid to BESSIE J. ADWELL, to retire said loan.* Each month thereafter on the last day of said month one/fourth (¼) of the net profits for the month after all expenses are paid *shall be paid to BESSIE J. ADWELL, until said loan is paid in full.*

"B. On the anniversary date of the date business is actually begun, the partnership will *pay to BESSIE J. ADWELL*, one/half (½) of all profits then on hand less all current expenses *as retirement of said loan* and further on the anniversary date of each year thereafter one/half (½) of all net profits then on hand less all current expenses *shall be paid to BESSIE J. ADWELL, in retirement of said loan.* (Emphasis ours.)

"VII. In the event of disolution of the partnership by any way other than death of one of the partners, all assets will be sold and after all liabilities are paid any monies then remaining shall be used first for the total retirement of the loan and any amount left over shall be split equally between the partners. In the event, that after payment of all liabilities, there is not an amount sufficient to pay the balance of said loan then after payment of what monies there are the loan shall be considered paid in full and the partners shall owe nothing further to each other.

"VIII. The Partnership will carry life insurance of each of said partners in the amount of $25,000.00 payable to the heirs of the deceased partners in lieu of any interest that heirs may have or claim to said deceased partners interest, and shall provide by Will that none of their heirs,

or surviving spouses, if any, shall be entitled to any share of the business or its proceeds and shall further by Will give to the surviving partner all right, title and interest in and to said partnership that each owns. The partners may from time to time increase the value of said life insurance policies by mutual agreement. *In the event BESSIE J. ADWELL's death is prior to total payment of the loan, any balance left owing shall be paid to the devisees under the terms of her will."* (Emphasis ours.)

IX. A paragraph designating a general manager for the partnership business and setting out a salary for the general manager.

X. A paragraph providing for the rights of a partner in the event of marriage to a third person by either partner.

A closing paragraph providing that the written agreement contains all of the agreements of the parties and may be modified at any time only by agreement reduced to writing, signed by both parties, and attached to the contract of September 17, 1969.

There are no additional written agreements in evidence modifying in any manner the written agreement of September 17, 1969, which is the only agreement before the Court for its consideration and construction.

In our opinion only paragraph VI of the agreement, above set out in its entirety, spells out the manner in which the loan is to be repaid. Twice each in subparagraphs "A" and "B", under paragraph VI, the agreement provides that certain sums of money, based upon net profits, shall be paid to Bessie J. Adwell to retire said loan. Thus, in four separate places in paragraph VI it is stated that Bessie J. Adwell shall be paid under the formulas provided therein.

Paragraph VII providing for the event of dissolution of the partnership by any way other than the death of one of the part-

ners has no application to the facts of this case.

■ Paragraph VIII which is primarily relied upon by the appellees provides for partnership insurance and then in the last sentence states that, "In the event BESSIE J. ADWELL's death is prior to total payment of the loan, any balance left owing shall be paid to the devisees under the terms of her will." Paragraph No. VIII makes no provision relating to a lump sum payment nor does it suggest any formula by which the balance of the loan is to be paid. This was provided by paragraph VI. The last sentence of paragraph VIII, in our opinion, was intended to substitute a payee in lieu of Bessie J. Adwell in event of her death to receive the payments which were to be made to her under paragraph No. VI.

This appeal does not involve the insurance provisions of Paragraph No. VIII. There is no dispute over the payment of the $25,000.00 to the heirs of the deceased, Bessie Adwell. This was received by the appellees in lieu of any interest they may have or claim to said deceased partner's (Bessie Adwell's) interest in the partnership.

The only interest the appellees have in the partnership as such is to collect the $120,000.00 which was loaned to it by Bessie Adwell.

■ It will be seen from the facts above enumerated that Bessie J. Adwell left a will dated July 19, 1967, and that the agreement between her and Langston was not executed until September 17, 1969. It is apparent, therefore, that the will was not prepared with the 1969 partnership agreement in mind and that her 1967 will cannot prescribe the manner by which the $120,000.00 loan is to be repaid.

As to the matter of the intentions of the parties referred to by the appellees in their brief, it would appear to us that from the very beginning Bessie Adwell knew that Langston was unable to contribute any cash. The agreement is replete with indication of this knowledge on her part. Langston could only provide his services and was paid a salary provided by the agreement in question. It had to be apparent to Bessie Adwell from the outset that Langston would never be able to pay off the loan in a lump sum. This explains the formulas for payoff of the loan based upon net profits which are spelled out in Paragraph No. VI of the agreement between them. We are of the opinion that the language contained in Paragraph VII of the agreement also very graphically reflects knowledge on the part of Bessie Adwell that her partner in the venture would be unable to repay the loan by any means other than by the formulas prescribed by Paragraph VI of their agreement.

A lump sum payment of the loan in question by Langston is not contemplated, provided for or intended by any provision or language contained in the agreement in question. There is not any suggestion in this entire record which would give rise to any intention expressed or otherwise that upon the death of Bessie Adwell the loan was to be repaid in a lump sum. As stated, Bessie Adwell, by Paragraph VIII of the agreement, was providing for a payee under the payment provisions of Paragraph VI as a substitute for her in event of her death prior to the time the loan was repaid. The agreement therefore provided that any balance left owing shall be paid to the devisees under her 1967 will.

Based upon what we have said to this point we reverse the judgment of the trial court and here render judgment that the appellees take nothing by this suit against the appellant and that the appellant, Robert Cecil Langston, go hence with his costs without day. All relief sought by the appellees in this cause is denied consistent with the holdings contained in this opinion. All costs are assessed against the appellees.

Reversed and rendered.